AKIN, Appellant, v. RICE et al., Respondents.

St. Louis Court of Appeals.   Opinion Filed March 23, 1909.

1. **INJUNCTIONS: Bond: Damages: Restraining Order.** On appeal from an order assessing damages on an injunction bond on motion after dissolution of a temporary restraining order, the evidence is examined and held sufficient to justify an allowance of $750 damages.

2. ———: ———: ———: ———. Where, on an application for an injunction to restrain defendants from doing certain acts, a bond was delivered by the plaintiff and a temporary restraining order was made and the defendants ordered to show cause on a given day why a temporary injunction should not be granted, and on the last mentioned day the temporary restraining order was dissolved, the plaintiff was liable on the injunction bond for the damages and expenses incurred in making the defense.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

AFFIRMED.

*Boyle & Priest, Morton Jourdan* and *Edward T. Miller* for appellant.

Plaintiff's demurrer to defendant's evidence should have been sustained. There can be no assessment of damages on an injunction bond unless an injunction shall have been granted and dissolved. R. S. 1899, secs. 3630-3647; Keber v. Bank, 4 Mo. App. 195; Bank v. Bank, 4 Mo. App. 505; St. Louis v. Gas Light Co., 82 Mo. 349; Baking Powder Co. v. Baking Powder Co., 82 Mo. App. 19; Byam v. Cashman, 78 Cal. 525, 21 Pac. 113; Carter v. Mulrein, 82 Cal. 167, 22 Pac. 1086; Dubberly v. Black, 38 Ala. 193; Butcher's Assn. v. Howell, 37 La. Ann. 280; Eakle v. Smith, 27 Md. 467; Railway v. Burke, 32 L. R. A. 329; 10 Ency. of Plead. and Prac., pp. 1119, 1120; 16 Am. and Eng. Ency. of Law, pp. 349,

454. If a temporary injunction had been issued and the services for which damages were assessed had been rendered in procuring the dissolution of that injunction rather than in preventing its issuance, still the amount so assessed is manifestly excessive. (a) Even in that event defendant would be entitled only to nominal damages. Fears v. Riley, 147 Mo. 457. (b) Or at most, to a reasonable fee for an attorney for services necessarily incurred in procuring a dissolution of a temporary injunction when issued. Bohan v. Casey, 5 Mo. App. 111; Neiser v. Thomas, 46 Mo. App. 53; 2 High on Injunctions (2 Ed.), secs. 1685-1690.

*R. F. Walker* and *Judson & Green* for respondent.

Under the law of this State, it is only where no notice is required to be given the defendant, and where no notice is in fact given of an application for an injunction that a restraining order is authorized. R. S. 1899, sec. 3647. It is only "when an injunction to stay proceedings is prayed in the same court where the proceedings were had, that no notice is necessary to the defendant of such application unless such notice is required by the rules of court." R. S. 1899, sec. 3641. The proceedings referred to in section 3631 supra, are "proceedings then pending" in the same court in which the injunction is prayed. Koch v. Hawkins, 40 Mo. App. 685. Regardless of the construction that may be given the statute in regard to the granting of restraining orders, this much is clear, that the assessment or damages for the dissolution of restraining orders has received express judicial approval, and the courts' rulings in this regard have never been questioned. Meiser v. Thomas, 46 Mo. App. 47; Price Bak. Pow. Co. v. Calumet Bak. Pow. Co., 82 Mo. App. 23; Kinealy v. Stead, 55 Mo. App. 179.

STATEMENT.—The case out of which the present controversy grows was an action commenced May 5, 1905,

by the filing in the circuit court of a petition against
Jos. P. Rice et al., as the Board of Railroad and Ware-
house Commissioners of this State, and the Merchants'
Exchange of St. Louis. The Merchants' Exchange is a
corporation organized not for pecuniary profit, but for
the purpose of facilitating in every way the transaction
of all legitimate business between its members and oth-
ers. Plaintiff Akin is a member of the Exchange and for
himself and certain of his customers, had entered into
various contracts on the Exchange, calling for the de-
livery to plaintiff and his customers, in May, 1905, of a
large quantity of No. 2 Red Winter wheat. The Board
of Railroad and Warehouse Commissioners of this State
is by law required to inspect and grade wheat received in
and issued out of the public warehouses in the State and
has the power and is charged with the duty of fixing
and determining the classification and grading of wheat.
To determine and fix this the board acts through grain
inspectors. It is a rule of the Merchants' Exchange that
warehouse certificates, transferable by indorsement and
issued by a public elevator or warehouse company in this
State and specifying the classification and grade of
wheat stored in an elevator or warehouse, shall govern
contracts made on the Exchange so far as concerns qual-
ity, quantity and grade of wheat represented therein.
Plaintiff charges, among other things in his petition,
that at the time of filing it there was a scarcity of No.
2 Red Winter wheat on this market and that to supply
the demand and enable the parties with whom plaintiff
had contracts to comply therewith, a large quantity of
wheat grown on the Pacific coast, known as Red Russian
wheat, "was being hurried to the warehouse companies
from various cities where it could not be graded as No.
2 Red Winter wheat; that by a secret arrangement be-
tween the Board of Railroad and Warehouse Commis-
sioner, this wheat was to be graded and classified as
No. 2 Red, and thereby, under and by virtue of the rule
of the Exchange, plaintiff and his customers would be

compelled to accept said Red Russian wheat, which was inferior in quality and grade to No. 2 Red, in satisfaction of their contracts to their great loss." It is also averred that the contracts of the plaintiff and other members of the Exchange are governed by such receipts and certificates, "in so far as the quality, quantity and grade of wheat so contracted for are concerned, and unless defendant Merchants' Exchange is restrained and enjoined from enforcing said rules and regulations, plaintiff and those from whom he has contracted as aforesaid, will be required to accept on their May contracts for No. 2 Red Winter wheat, said inferior Red Russian wheat, to his and their great and irreparable damage."

It is further charged, "that there is now being shipped to the St. Louis market, from Milwaukee and Chicago, large quantities of Red Russian wheat, which plaintiff and his customers will be required to accept in satisfaction of their contract for Red Winter wheat, unless the Board of Railroad and Warehouse Commissioners be enjoined from so grading and classifying it, and unless the Merchants' Exchange be restrained and enjoined from enforcing its rules and regulations aforesaid, relating to said certificate or receipt," referring to the warehouse and elevator receipts.

The prayer is "that defendants Board of Railroad and Warehouse Commissioners . . . be restrained and enjoined from grading or causing, suffering or permitting to be graded, in this State, any and all Red Russian wheat arriving in store from and after this date in any of said public warehouses or elevators as Native No. 2 Red Winter wheat, or as any other grade of Native Red Winter wheat, and that they, and each of them, be restrained and enjoined from taking any steps or doing anything whatever which will, in any wise, cause or permit Red Russian wheat, or any wheat of a grade or quality below or different from Red Winter wheat, as now established and designated, so arriying in said

warehouses and elevators to be inspected, graded or certified, as such;" that the Board be required to rescind and revoke its orders authorizing its grain inspectors to grade and classify Red Russian wheat as No. 2 Red Winter wheat; "that defendant Merchants' Exchange, its officers, agents, servants and employees, be restrained and enjoined from enforcing such of its rules and regulations as require plaintiff, under his contract as aforesaid, for No. 2 Red Winter wheat, deliverable in May, 1905, to be bound by such warehouse certificates or receipts as to the standard and grade of wheat so arriving in said warehouses and elevators to be received under said contract, and that upon a hearing hereof the temporary restraining order be made permanent, and for such other and further orders and relief as may be meet and proper in the premises."

Along with this petition plaintiff filed a bond, with himself as principal and Corwin H. Spencer as surety, obligating themselves to the members of the Board of Railroad and Warehouse Commissioners and their grain inspectors, naming them, and to the Merchants' Exchange of St. Louis, in the sum of $2,000, in which it is recited that, "whereas upon the application of the above bounden, the circuit court of the city of St. Louis has granted a temporary injunction against Jos. P. Rice" (naming also the other members of the Board and its grain inspectors), "and the Merchants' Exchange of St. Louis, as by the record of said circuit court will fully appear; now, therefore, if said Thos. J. Akin shall and will abide the decision which shall be made in the case wherein said injunction was granted, and pay all sums of money, damages and costs that shall be adjudged against him, if the said injunction shall be dissolved, then this obligation shall be void, otherwise to remain in full force and effect." The bond was signed by plaintiff and Spencer and approved by a judge of the circuit court on the same day the petition was filed with the clerk, that is, May 5, 1905. Upon the filing of the

petition in the clerk's office of the circuit court, on the same day, that is, May 5th, the following order was issued.

"Now, at this day, it appearing to the undersigned that plaintiff has filed in the office of the clerk of this court, his petition, setting forth his cause of action against the defendants, and it further appearing therefrom that the plaintiff, upon the facts stated in said petition, is entitled to the relief prayed for, it is, therefore, ordered that a temporary restraining order be granted herein, and such restraining order is hereby granted, restraining and enjoining the defendants Board of Railroad and Warehouse Commissioners, and the officers and agents of the grain inspection department of this State, who are made parties defendant in this suit, and their several agents, servants and employees, from grading or causing, suffering or permitting to be graded into store in this State, Red Russian wheat as Native No. 2 Red Winter wheat, or as any other grade of Native Red Winter wheat, and further restraining said defendants, and each of them, from taking any steps or doing anything whatever which will in anywise cause or permit Red Russian wheat, or any wheat of a grade or quality below or different from Red Winter wheat, as now established and designated, to be inspected, graded or certified as such; and that defendants, Merchants' Exchange, its officers, agents, servants, and employees be, and they hereby are, restrained and enjoined from enforcing such of its rules and regulations as require plaintiff, under his contracts, as specified in the petition for No. 2 Red Winter wheat, deliverable in May, 1905, to be bound by public warehouse certificates or receipts as to the standard and grade of wheat to be received under said contract, until the further order of this court, upon plaintiff filing with the clerk of this court a bond in the sum of two thousand dollars conditioned as required by law, with Corwin H. Spencer as

Akin v. Rice.

surety which bond is approved by the undersigned and filed.

"Defendants are ordered to appear in Division No. 6 of this court on the fifteenth day of May, 1905, at 10 o'clock a. m., to show cause why temporary injunction should not be granted."

On the return day, that is May fifteenth, all of the defendants, except the Merchants' Exchange, filed their return to this order to show cause and on the same day the respondent filed its separate return and answer.

It is not necessary to notice this answer any further than to say that it set up the purpose of the corporation very fully, set up the duties of the Board of Railroad and Warehouse Commissioners; denied that it has any rules governing the inspection of grain upon going into or out of elevators, but averred that all grain upon so going into or out of elevators, must be inspected according to the laws of the State and the rules of inspection established by the Board of Railroad and Warehouse Commissioners, and that all such rules are well known among grain merchants and commission merchants dealing in grain in the St. Louis market; denied that it has anything to do with the establishment of the grades but averred that all the contracts for May delivery of No. 2 Red Winter wheat, to which reference is made in the petition, were made by the plaintiff and the respective parties with reference to the public classification of grades and the public inspection by the official inspectors thereunder and the rules and regulations made in conformity therewith, and the only duty of this defendant in relation to such contracts is in providing for the enforcement of the same in accordance with the rules and regulations of the Exchange and subject to the laws of the State as above set forth; denied there is any equity in the bill and denied the jurisdiction of the court to review the action of the Railroad and Warehouse Commissioners in fixing and establishing the grades of wheat; denied that it, the Exchange, has any interest

in the controversy of plaintiff with relation to the proper construction and application of the official classification of the Board, or in the contracts made by plaintiff and others as to the delivery of No. 2 Red Winter wheat, and averred "that plaintiff is a member of the defendant Merchants' Exchange of St. Louis, that he makes no complaint in his petition that any of the rules and regulations made by the Exchange are unreasonable or invalid for any reason, and defendant therefore submits that plaintiff has no ground of injunction against this defendant from enforcing its said rules and regulations requiring plaintiff to perform his contracts heretofore made with reference thereto, subject to the said rules and regulations of the said Merchants' Exchange.

"Wherefore, defendant asks that the restraining order heretofore entered be dissolved as to this defendant and that it be hence discharged with its costs."

A reply was filed to this answer, denying generally the allegations contained in it.

On May 27, 1905, the following order was entered in the case: "Now at this day this cause coming on for hearing upon the restraining order, an order to show cause made herein, on May 5, 1905, and the return and answer submitted to same, and the court having heard and duly considered the same, and being fully advised in the premises, doth order that said restraining order be and is hereby vacated and the preliminary injunction be and the same is hereby denied."

Afterwards the Merchants' Exchange filed its motion for an allowance of $1,000 for its trouble and expense, "In securing the dissolution of the restraining order or temporary injunction granted herein against it, and in and about its defense to plaintiff's petition for a permanent injunction, and in the employment of counsel to prepare its return and to appear and represent it at the hearing for said injunction," placing its damage at the $1,000 which it asked be assessed against

the plaintiff in the cause and judgment entered for amount in its favor.

At the December, 1905, term of the court, plaintiff voluntarily dismissed his case. At the June term, 1906, of the court, the motion for assessment of damages against Akin came on for hearing (the motion having been dismissed as against the surety, Corwin H. Spencer). A jury was waived and during the December term, 1906, the motion coming on for hearing it was sustained, the damages assessed at the sum of $750, and judgment entered in that amount. A motion for new trial was duly filed, overruled, exceptions saved and an appeal taken to this court.

REYNOLDS, P. J. (after stating the facts).— There are two questions presented by the appeal and briefed by counsel. It is claimed by the appellant, first, that no temporary injunction ever having been issued in the case, the obligation of the bond has not been forfeited and, in the second place, that the amount awarded is too large and is grossly excessive. Taking up the latter proposition first, the ground of this contention is that the court, in awarding these damages, and the attorneys who testified as to the value of the services, had improperly taken into consideration, in estimating the damages, the services of the attorneys for the Merchants' Exchange in connection, not only with the dissolution of the injunction or temporary restraining order, as it is insisted upon the order is, but also with their services in the defense of the case on its merits, or, more correctly, an examination of the case on its merits. We cannot agree to this view. We are satisfied from the evidence in the case that the court and witnesses made proper discrimination, as far as it was possible to do so. In point of fact, it is very difficult, in view of the averments in the petition, to understand how one could be separated from the other. Any conscientious lawyer, competent to attend to such a case, would

necessarily have to go into all the allegations of the petition in order to advise himself and his client on the proper steps to be taken to vacate the restraining order issued, the continuance of which in force was the very gist of the controversy. So true was that in this case that when the court determined that it would not continue the restraining order in force pending final hearing of the case, and when the continuance of the restraining order until final hearing was denied, the plaintiff, recognizing the futility of a further prosecution of the case, voluntarily dismissed it. The dissolution of this temporary restraining order was practically the end of the case; the question of whether it should be dissolved undoubtedly and necessarily turned upon the consideration of the allegations in the petition. Damages are only allowed on dissolution of an injunction, for services rendered in securing the dissolution. We cannot conceive of any way by which even the most astute legal mind could, in this case, accurately divide one from the other; but because they could not do so to a hair is no reason why services rendered in securing the dissolution should not be paid for, and their value assessed on the bond. It was the duty of the court and witnesses to make the best estimate possible of the value of the services in connection with the dissolution of the injunction. The court evidently did that. So did the attorneys who testified. While the latter varied in their estimate from $1,000 to $2,000, no one went below $1,000, all saying that they would consider $1,000 as a very low fee. The court allowed $750. We see no reason to hold that this award was excessive.

The second proposition turns entirely upon an effort to draw a distinction between a temporary restraining order and a temporary injunction. This is a contention over names more than over substance. The temporary restraining order was issued upon the distinct condition that the plaintiff file with the clerk of the court a bond in the sum of $2,000, as required by law.

This order was entered on the fifth of May. The bond in question was filed on that day and was approved on the same day by the judge of the court. Under our statute, the court had no power whatever to issue any kind of a restraining order in the nature of an injunction without the exaction and the execution of a bond. Section 3637, Revised Statutes 1899, specifically provides: "No injunction, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the State in its own behalf, until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction to the parties enjoined, . . . conditioned that the plaintiff will abide the decision which shall be made thereon, and pay all sums of money, damages and costs that shall be adjudged against him if the injunction shall be dissolved." The authority of the courts of this State to issue injunctions is coupled with the obligation to exact a bond. The statute is not to be evaded or frittered away by calling that which is an injunction by any other name. The restraining order in this case was of force against all of the defendants until it was dissolved and a further injunction refused on hearing of the motion to make it of force until final hearing. Who can doubt that a disregard of it would have subjected those against whom it was leveled and who were bound by it, to punishment for contempt, exactly as absolutely as if it had been termed a temporary injunction? It would have been treated exactly as any other injunction. We decline to follow the refinements of the very able, industrious and learned counsel for the appellant in their attempt to draw a distinction between such a temporary restraining order and an injunction.

The point is made that this is an action on a bond and that in actions of that kind a strict construction is

to be indulged in, in favor of the obligors. That is true, but it does not apply to this case. That rule is always enforced for the protection of sureties. In the case at bar the action was dismissed as to the surety and the award is against the principle in the bond. We know of no case and have been referred to none, that extends this doctrine or presumption to the principle.

A consideration of the whole case leads us to the conclusion that whether called a temporary injunction or a restraining order, the bond covered it; and that the amount assessed is reasonable and the judgment of the court correct. Its action is affirmed. All concur.